UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **4INTERNET, LLC** ) | |
| ) | |
| Movant, ) | |
| ) | CIVIL ACTION NO. |
| vs. ) | |
| ) | \_\_1:21-mc-00004\_\_\_\_ |
| **NYP HOLDINGS, INC.** ) | |
| ) | |
| Respondent. ) | |

_____

**4INTERNET, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY FROM NYP HOLDINGS, INC.**

    **I.    INTRODUCTION**

4Internet, LLC ("4Internet) hereby moves to compel the production of documents from third party NYP Holdings, Inc. ("the NY Post") in connection with a subpoena issued from the United States District Court for the District of Nevada in a case captioned Robert Miller v. 4Internet, LLC with Case No. 2:18-cv-02097-JAD-VCF ("the Nevada Action"). The subpoena was issued in July, adjourned in August, and after an attempt to narrow the scope of the subpoena and to resolve this dispute, no documents have been produced.

    **II.    FACTUAL BACKGROUND**

Robert Miller ("Miller") alleges he is a professional photographer who took a picture that was published in the New York Post online edition. Miller has been a Plaintiff in twenty-five copyright lawsuits over the past three years. In cases filed in this district, Miller is represented by Richard Liebowitz. Every case Miller has filed was preceded by a New York Post publication.

Miller's corporate disclosure statement reflects that Christopher Sadowski ("Sadowski") is his agent that has a financial interest in the outcome of the case.[1] Sadowski has filed over 120 copyright cases in the past four years, including 40 in which he was also represented by Mr. Liebowitz and 18 in which he was represented by Higbee & Associates, which represents Miller in this case. It appears that the vast majority (if not all – but that's a time-consuming task of little value), of those lawsuits also arose from pictures published in the New York Post online edition.

Defendant operates a search engine and has asserted numerous defenses to Plaintiff's claim. In an effort to obtain evidence that would refute Plaintiff's claims and support 4Internet's defenses, 4Internet served a Subpoena on the New York Post, which was accepted by e-mail on July 24. On August 6, the parties conferred by phone and agreed that the Subpoena would stand adjourned pending receipt of discovery from the Plaintiff and that if revived, the New York Post would have thirty

---

[1] See Doc. 2 in Miller v. 4Internet

days to respond. On October 13, after having received discovery, 4Internet narrowed the scope of the subpoena. On November 16, the undersigned informed the New York Post that thirty-day period agreed to on August 6 would start. The parties further conferred for about an hour by video conference on November 19. On December 7, the undersigned followed-up, but did not receive a response.

### III.   JURISDICTION AND VENUE

This Motion is being brought in this district because the NYP Holdings, Inc. offices are located at 1211 Avenue of the Americas, New York, NY 10036, which is located within this district. F.R.C.P. § 45(c)(2) requires subpoenas be served where the person resides, is employed, or transacts busines, and subsection (g) confers jurisdiction on this Court as the place of compliance with authority to enforce it. In addition, F.R.C.P. § 37(a)(2) requires any motion to compel against a non-party to be filed in the court where the discovery is or will be taken.

### IV.   ARGUMENT

A.  Burden

Ordinarily, the party seeking discovery bears the initial burden of showing relevancy, and once done, the burden shifts to the party resisting the discovery. *Amphenol Corp. v. Fractus, S.A.*, 2019 WL 2521300, at *6 (S.D.N.Y. June 19, 2019). The New York Post has not served any objections, and has not moved to

quash, which is makes it difficult to understand what exactly is the basis for its refusal to comply with the subpoena (other than it was suggested they would object even prior to seeing the subpoena).

B.  Scope of Discovery

The scope of discovery for subpoenas to non-parties under Rule § 45 is the same as Rule § 26(b).  *Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Relevance is construed broadly and includes "any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of New York Mellon*, 2018 WL 2215510, at *6 (S.D.N.Y. May 15, 2018) (citations omitted).

C.  Plaintiff's Claim and Defendant's Defenses

Plaintiff seeks to recover statutory damages for copyright infringement.  The Ninth Circuit has not enumerated any particular guideposts for consideration other than the Supreme Court's admonishment "what is just in the particular case,

considering the nature of the copyright, the circumstances of the infringement and the like, ... but with the express qualification that in every case the assessment must be within the prescribed [maximum or minimum]. Within these limitations the court's discretion and sense of justice are controlling." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (citing *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952)). The Second Circuit has articulated that "when determining the amount of statutory damages to award for copyright infringement, courts consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (citation omitted). Regardless of the test, the value of the picture, related licenses, and the parties' behavior are relevant to the statutory damage analysis.

On September 2, under oath in response to Defendant's interrogatories, Miller stated that the New York Post paid him a day rate, which he contends

doesn't accurately convey the value of his work.[2] On February 17, Mr. Miller's attorney Raymond Ngo, who works with Higbee & Associates,[3] swore in a court filing in connection with an April 2018 New York Post published picture that Mr. Miller's licensing fee was approximately $3,000.  Miller v. Haredim Consulting Inc. 1:19-cv-01474 (NYND) (Doc. 11-2).

In *Sadowski v. Roser Commc'ns Network, Inc.*, 6:19-CV-592, 2020 WL 360815, at *2 (N.D.N.Y. Jan. 22, 2020), Sadowski "declined to disclose the licensing fee that he commanded for the photograph from the New York Post" while in yet another case, Mr. Sadowski's counsel (Richard Liebowitz[4]) represented that he licensed a photo to the New York Post for $275.  *Sadowski v. Ziff Davis, LLC*, 20CV2244 (DLC), 2020 WL 3397714, at *1 (S.D.N.Y. June 19, 2020).  These contradictions above are just easily found examples that beg the question of what it is that is really going on here.

---

[2] Defendant agrees.  At best, the "value" would be the day rate divided by the number of hours worked divided by the number of pictures taken.
[3] https://www.higbeeassociates.com/about/attorneys/ (last visited December 22, 2020)
[4] The same Richard Liebowitz who has been suspended by the bar of this Court after having been sanctioned for gross misconduct including shamelessly lying. *Usherson v. Bandshell Artist Mgmt.*, 19-CV-6368 (JMF), 2020 WL 3483661 (S.D.N.Y. June 26, 2020)

Defendant has also asserted a fair use defense, which implicates the value of the copyrighted work. See 17 U.S.C. § 107(4). Of course, the factors are not exclusive. Rather, fair use is an equitable rule of reason that requires each case to be considered on its own. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985) (citation to Congressional Record omitted).

Any agreements, payments (either way), licenses, and assignments are all relevant to the issue of statutory damages and these defenses. Communications between the New York Post and Miller and Sadowski regarding payments, assignments, values, or the existence, nature, and scope of litigation are all relevant to these defenses (as well as the defense of unclean hands).

Defendant has pleaded other defenses such a license based on the posting of the image to Twitter. See *Sinclair v. Ziff Davis, LLC*, 454 F. Supp. 3d 342 (S.D.N.Y. 2020), adhered to in part on reconsideration, 18-CV-790 (KMW), 2020 WL 3450136 (S.D.N.Y. June 24, 2020). Further, 4Internet has disputed the nature of Miller's profession. While Miller claims to be a professional photographer, 4Internet contends that Miller and Sadowski are just professional litigants who have figured out a way, with their lawyers to use the courts as an ATM.

D.  Defendant Seeks to Compel the Subpoena as Narrowed

4Internet seeks only to compel the documents as narrowed in the October 13 e-mail. There, many of the requests were withdrawn and others narrowed. In fact, and as the Court can see, it may be that for many of the categories of documents they do not exist – but Defendant is entitled to that as a response if it is indeed the case. The e-mail is below in its entirety for the Court's convenience.

> **From:** Ryan Isenberg
> **Sent:** Tuesday, October 13, 2020 6:38 PM
> **To:** Gavenchak, Genie <ggavenchak@newscorp.com>
> **Subject:** RE: New York Post
>
> Genie
>
> I am largely in receipt of responses and documents from Robert Miller, and per our prior conversation and agreement, and now following up. I will attempt to either narrow, clarify, or explain what I am looking for or why I am asking for the documents in the specific categories. As I think I mentioned when we spoke, Mr. Miller and Mr. Sadowski are (though not in this case) represented by attorney Richard Leibowitz and I simply do not trust anything that has been produced.
>
> Let me know if you want to discuss further, or if you just intend to object or move to quash the subpoena.
>
> Thanks.
>
> 1. All contracts with Miller.
>
> Additional Information: Mr. Miller has produced a redacted copy of a single contract dated May 14, 2015. If that's true, then it shouldn't be that difficult to search for and produce that to me unredacted. If it's not true, and there are other documents, I obviously need to know that as well.
>
> 2. All license agreements with Miller.
>
> Additional Information: The May 2015 agreement contains a "rights" section, which is all I would assume there is, but there is an internal conflict in the agreement, so I need to know if there are in fact any other license agreements.

3. All copyright assignments from Miller.

Additional Information: It appears under the May 2015 agreement that copyrights are reserved to the photographer. Presuming this is "the" agreement, then there shouldn't be any such assignments.

4. All payments made to Miller.

Additional Information: Mr. Miller has provided what he identifies as his 2018 Form 1099. I am happy to provide his tax identification number, but will need a breakdown of when he was paid and for what. I would be happy to start with the years 2017 – 2019 to limit the request.

5. Any payments made from Miller.

Additional Information: The May 2015 agreement references Miller sharing money recovered in copyright enforcement actions. He has denied there are any such payments, but I would obviously like to confirm.

6. All photographs you commissioned Miller to take.

Alternative: I am fine for now in getting the communications from the photo editors.

7. All photographs you licensed or purchased from Miller.

Alternative: I am fine for now in getting the communications from the photo editors.

8. All invoices received from Miller.

Additional Information: The May 2015 agreement appears to require the photographer to submit invoices. Mr. Miller seems to deny there are any, so if that's the case, I would like confirmation.

9. All communications with Miller.

Additional Information: Mr. Miller identified two individuals that he communicated with at the NY Post. Those individuals are Chad Rachman and Ariel Ramirez. Mr. Rachman's e-mail address is crachman@nypost.com. I would assume there would be a similar naming convention for Mr. Ramirez. Mr. Miller's e-mail address appears to be robertmillerphotographer@gmail.com. The 2015 agreement that I have is unsigned, but there appears to be a signature line for a David Boyle. There is also a reference to the use of a photodesk@nypost.com address for use to send availability. With this additional

information, your client should be able to more easily identify and produce communications with Mr. Miller.

10. All contracts with Sadowski.

11. All license agreements with Sadowski.

12. All copyright assignments from Sadowski.

13. All payments made to Sadowski.

14. Any payments made from Sadowski.

15. All photographs you commissioned Sadowski to take.

16. All photographs you licensed or purchased from Sadowski.

17. All invoices received from Sadowski.

18. All communications with Sadowski.

I am willing to subpoena Mr. Sadowski first to see what I get if you want to table this until that time, but other than not having Mr. Sadowski's e-mail address, the same additional information or alternatives for Mr. Miller apply to Mr. Sadowski.

19. All agreements between You and Twitter.

Additional Information: The image in this lawsuit was put on the NY Post twitter feed, and my client has asserted a license defense. I need to know if there is any agreement between the NY Post and Twitter that would vary from the published Twitter terms of service.

20. Documents showing who at the New York Post was authorized to transact business with Miller.

Withdrawn: For now since I believe these three people have been identified, I will withdraw this request.

21. Documents showing who at the New York Post was authorized to transact business with Sadowski.

Withdrawn: For now since I believe these three people have been identified, I will withdraw this request

22. Internal documents, policies and procedures in place from January 1, 2017 to the present, relating to the decision to use both a stock image and an image credited to a photographer on the same story.  As an example, see Exhibit "1."

    Alternative:  It may make more sense for me to depose Mr. Rachman or Mr. Doyle (I understand Mr. Ramirez somewhat recently left) to get the answer to this question, but its relevant to our case, and I am going to need an answer.  Please let me know if you will accept a subpoena directed to them.  I could probably do these depositions via Zoom, but I want to resolve the documents issues first.

23. All communications from January 1, 2017 to the present that relate to any story that used both a stock image and one credited to Robert Miller or Christopher Sadowski.

    Alternative:  I will assume for now that these would be included in the communications that would be produced with Mr. Miller or Mr. Sadowski.

24. Logged (or logging) data from January 1, 2017 that shows the uploading of the photographs for each story in which both a stock image and an image that is credited to Robert Miller or Christopher Sadowski.

    Alternative / Additional Information:  I need to understand how and why this happens.  Every case filed by Mr. Miller, and almost every case filed by Mr. Sadowski, is based on a photo that was published in the NY Post online edition.  I am willing for now to make this a topic of discussion in a deposition of presumably either Mr. Doyle or Mr. Rachman, but essentially, I need to understand why these pictures were substituted they way they were and who had access to do that.

25. Any internal policies or procedures regarding posting stories with photographs to New York Post social media.

Based on the August 6 agreement and the November 16 communication to start the clock on the thirty days, the New York Post had until December 17 to object or move to quash. The failure to timely raise any objections constitutes a waiver of whatever those may have been. *Ambac Assurance Corp. v. U.S Bank Nat'l Ass'n*, 117CV2614WHPKHP, 2020 WL 526404, at *2 (S.D.N.Y. Feb. 3, 2020) citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D. N.Y. 1996).

## V. CONCLUSION

Based on the foregoing, the Court should Order the New York Post to comply with the subpoena as narrowed.

This 6th day of January, 2020

*/s/ Ryan L Isenberg*
Ryan L. Isenberg
Isenberg & Hewitt, P.C.
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
T 770 351 4400
F 770 828 0100
ryan@ihlaw.us

Attorney for Movant 4Internet, LLC